## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEIZURE WARRANT

I, Simon Butler, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been employed in this capacity since 2021. I am currently assigned to the Louisville Division of the FBI and have primary investigative responsibility for white collar crimes and public corruption violations. I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 1343, 1349, and 1956, and I am authorized by the Attorney General to request a seizure warrant. I have been trained to investigate federal cases and provide witness testimony during a federal trial. Before becoming a Special Agent, I was employed by the Department of Defense in the United States Air Force and United States Marine Corps.

2.  The information contained in this affidavit is based upon my personal knowledge, my consultation with other FBI agents, my review of certain records and documents, interviews of witnesses, and information provided by other state and local law enforcement officers.

3.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**PURPOSE OF AFFIDAVIT**

4.  This affidavit is submitted in support of an application for a combined criminal and civil forfeiture seizure warrant for the following assets:

    a.  0.71193618 BTC (aka "Bitcoin") and 22.39100298 USDT (aka "Tether") in Binance Holdings Limited ("Binance.com") account 20913870.

Throughout this affidavit, I will refer to these accounts collectively as the "SUBJECT ASSETS."

5.  As set forth below, I submit that there is probable cause to believe that the SUBJECT ASSETS constitute property involved in transactions in violation of 18 U.S.C. § 1956. These assets are, therefore, subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1) (civil forfeiture) and 982(a)(1) (criminal forfeiture).

**FORFEITURE AND SEIZURE AUTHORITY**

6.  As to civil forfeiture, under 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of [18 U.S.C. §§ 1956], or any property traceable to such property" is subject to forfeiture to the United States. Property subject to civil forfeiture under 18 U.S.C. § 981(a)(1) may be seized pursuant to 18 U.S.C. § 981(b).

7.  As to criminal forfeiture, under 18 U.S.C. § 982(a)(1), "[t]he court, in imposing sentence on a person convicted of an offense in violation of [18 U.S.C. §§ 1956] shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." As property subject to criminal forfeiture under 18 U.S.C. § 982(a)(1), the SUBJECT ASSETS may be seized pursuant to 21 U.S.C. § 853(f) (by 18 U.S.C. § 982(b)(1).

8.  With respect to seizure for criminal forfeiture, 21 U.S.C. § 853(f) provides that a court may issue a criminal seizure warrant when it "determines that there is probable cause to

believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that a protective order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture." As set forth further below, there is a substantial risk that the SUBJECT ASSETS will be withdrawn, moved, dissipated, or otherwise become unavailable for forfeiture unless immediate steps are taken to secure them at the time the requested searches are executed. As all forms of cryptocurrency, the SUBJECT ASSETS are inherently portable and fungible. Furthermore, many cryptocurrencies are subject to speculative valuations and volatile price swings. Even a so-called "stablecoin" cryptocurrencies pegged to fiat currency (such as Tether, which is pegged to the U.S. dollar) faces substantial questions about the assets backing the cryptocurrency and whether the cryptocurrency would withstand, for example, a run on the cryptocurrency caused by a drop in investor confidence. Thus, even assuming the targets of this investigation could be located and extradited for prosecution, there is a substantial possibility that the SUBJECT ASSETS would experience a significant devaluation before any orders of forfeiture could be imposed pursuant to conviction of the targets. I therefore submit that a protective order under 21 U.S.C. § 853(e) would not be sufficient to assure that the SUBJECT ASSETS will remain available for forfeiture.

      9.      To seize the property referenced in the cryptocurrency accounts in this case for criminal or civil forfeiture, the Government must show that there is probable cause to believe that wire fraud or money laundering occurred, and that the accounts were involved in money laundering. 18 U.S.C. § 982(a)(1); *United States v. Huber*, 404 F.3d 1047, 1056-58 (8th Cir. 2005); *United States v. Warshak*, No. 1:06-CR-111, 2008 U.S. Dist. LEXIS 13284, *3-4 (S.D. Oh. Feb. 22, 2008)

10. The SUBJECT ASSETS are held in a cryptocurrency account that is involved in the offenses described above and hereafter, which received illegally obtained funds from a victim who fell for a financial scam. This account may have also received money that is not traceable to this scam. "When money from illegal sources is co-mingled with money from unspecified other sources, 'all such funds are attributable to the money laundering scheme.'" *United States v. Jamieson,* 427 F.3d 394, 404 (6th Cir. 2005) (quoting *United States v. Owens,* 159 F.3d 221, 229 (6th Cir.1998)). Assets "involved in the offense," including entire accounts where only a portion of the incoming funds was proven illegitimate, are forfeitable. *United States v. Certain Funds on Deposit in Account No. 01-0-71417*, 769 F. Supp. 80, 84 (E.D.N.Y. 1991) (explaining that 18 U.S.C. § 981(a)(1)(A) "has been construed by the district courts as authorizing the forfeiture of an entire bank account or business which was used to 'facilitate' the laundering of money in violation of 18 U.S.C. § 1956 . . . [e]ven if a portion of the property sought to be forfeited is used to 'facilitate' the alleged offense") (internal citations omitted).

11. For the reasons listed above, the United States seeks combined criminal and civil seizure warrants, authorizing law enforcement to seize the SUBJECT ASSETS and preserve them pending further forfeiture proceedings.

**PROBABLE CAUSE**

12. On April 13, 2022, the FBI received a complaint from the son of an elderly woman (hereafter "Victim") who fell victim to a tech support scam and deposited approximately $10,000 at two Bitcoin ATMs located in Lexington, Kentucky. The Victim is a resident of Lexington, Kentucky. The scammers called the Victim and claimed to be employees with Amazon, an FBI Special Agent, and a "Kentucky Police Department" Deputy. During the morning of April 13, 2022 the scammers contacted the Victim on her home phone and informed the her that the

computer she ordered was being shipped to her. When the Victim responded that she does not have an Amazon account and did not order a computer, she was transferred to an individual who purported to be "Officer Page". The scammers communicated with the Victim using VoIP (Voice over Internet Protocol) phone number: (301) 478-7469. "Officer Page" informed the Victim that her bank accounts have been identified as being used to launder money, and to protect her accounts the Victim needed to open an online account with Bitcoin. To verify his identify, "Officer Page" sent a picture of his credentials to the Victim's cellphone. The credentials purported to show that "Officer Page" is an FBI Special Agent.

13. "Officer Page" kept the Victim on her cellphone, instructing her to withdraw cash from her bank account and deposit it at a bitcoin ATM located in Lexington, KY. During the afternoon of April 13, the Victim visited two bitcoin ATMs, depositing $2,900 at the first ATM, and then approximately $7,000 at the second ATM. Only the first ATM provided a printed receipt.

14. The Victim resisted "Officer Page's" instruction to send additional money beyond the $10,000. "Officer Page" said he would call the "Kentucky Police Department" to have an "Alicia Fray" contact the Victim. The Victim received a call from an individual who purported to be "Alicia Fray", who told her what "Officer Page" instructed her to do was correct.

15. According to open-source research of the two Bitcoin QR codes sent to the Victim by the scammers to use at the Bitcoin ATMs, the QR codes are associated with receive addresses 18XwNjFJmKQiqBkP1gAhrEuRZ7f1eYvSc9 ("**18XwNj**") and 1Ne8QkGYLWgQuB51z8vG8ek46PnxK8teui ("**1Ne8Qk**"). Only one of the Bitcoin ATM deposits completed by the Victim provided a printed receipt. According to the receipt, the first transaction occurred on April 13, 2022 at 2:21pm (EDT) with a $2,900 cash deposit resulting in 0.05906829 BTC sent to address **18XwNj**, less a $391.50 fee (13.5%).

16. According to open-source analysis of the BTC blockchain, 0.05906829 BTC posted to address **18XwNj** through transaction **9ca759**:

| Transaction ID | Create Time (UTC) |
|---|---|
| **9ca759**83b2914b1b5f13f196b30fcbbcb7c6f37740396f3850cea2a0d53ecdc7 | Apr 13, 2022 18:51 |

17. According to open-source analysis of the BTC blockchain, address **1Ne8Qk** has transacted three times on the blockchain, with two deposits occurring on April 13, 2022.

| Date | Time (UTC) | Amount | Transaction ID |
|---|---|---|---|
| 4/13/2022 | 16:04 | 0.14124091 BTC | 2daecb |
| 4/13/2022 | 19:42 | 0.14365043 BTC | **ad06b2** |

Transaction IDs
2daecb6d8b3cc6460c0c188f94ed661b53c0f2db07118985e833422651f7bbe4 ("**2daecb**")
ad06b2fa35b3cce61f2980443f91ced88d431d7d8fa25f7814709b90b58c1a5a ("**ad06b2**")

According to the Victim, the deposit to **1Ne8Qk** occurred after the deposit to **18XwNj**; therefore, second deposit completed by the Victim is associated with transaction **ad06b2**.

18. According to open-source analysis of the BTC blockchain, the USD equivalent value of BTC sent to address **1Ne8Qk** through transaction **ad06b2** was approximately $6,000. This is consistent with the Victim's account of transferring approximately $7,000 through this second transaction since this transaction also occurred through a Bitcoin ATM and likely incurred a similar processing fee as the ATM processing fee of 13.5% incurred on the first transaction.

19. The proceeds received by addresses **18XwNj** and **1Ne8Qk** through transactions **9ca759** and **ad06b2**, respectively, were subsequently transferred to the benefit of address 1JWiM2qZLnvP3W2Th4EGcTWJNYD2kfWjdJ ("**1JWiM2**") and immediately commingled with BTC transferred from other addresses through the following transaction:

| Date | Time (UTC) | Amount | Sending Address |
|---|---|---|---|
| 4/14/2022 | 08:04 | 0.00820343 | 1LE2oGFUMsuS842Vr9r1q5Kp6kZGQZ7noS |
| | | 0.14124091 | 1Ne8QkGYLWgQuB51z8vG8ek46PnxK8teui |
| | | **0.14365043** | **1Ne8Qk**GYLWgQuB51z8vG8ek46PnxK8teui |
| | | **0.05906829** | **18XwNj**FJmKQiqBkP1gAhrEuRZ7f1eYvSc9 |

Transaction ID
**c0412d**6c1381a1d28d1a4c043f43b608e95ab14f3322bcbd7e37b8d40f8d01f5 ("**c0412d**")

20.     According to records voluntarily provided by Binance.com (Binance Holdings Limited) in response to a formal request, **1JWiM2** belongs to the following account owner:

User ID: 20913870
Email: rakeshbtcsell@gmail.com
Name: Lodha Vijay Mansukhbhai
DOB: March 29, 1976
KYC Document Issuer: Government of India

21.     The above referenced transfer of Victim funds to the benefit of **1JWiM2** was traced to the Binance Deposit History report for User ID: 20913870 (provided by Binance Holdings Limited):

| Transaction ID | Create Time (UTC) |
|---|---|
| **c0412d**6c1381a1d28d1a4c043f43b608e95ab14f3322bcbd7e37b8d40f8d01f5 | 2022-04-14 08:06:32 |

22.     According to the Order History records provided by Binance Holdings Limited, 0.345000 of the BTC received by User ID 20913870 through transaction **c0412d** was converted to 14,248.50 USDT within minutes of the deposit:

| BTC Quantity | Amount (USDT) | Date | Time (UTC) |
|---|---|---|
| 0.345000 | 14,248.50 | 2022-04-14 08:09:15 |

23.     According to the Withdrawal History report provided by Binance Holdings Limited, following conversion to USDT, User ID: 20913870 processed the following withdrawal transactions transferring the USDT obtained with Victim funds to destination addresses **TNcB9r** and **TNWDMi**:

| Amount (USDT) | Receive Address | Transaction ID | Date | Time (UTC) |
|---|---|---|---|
| 7,194.72 | **TNcB9r**ui2m5SESe1kYvayPYeLcxgU7XTaT | 9a435c | 2022-04-14 16:05:53 |
| 8,904.89 | **TNWDMi**vNNjnB7vDTbYcqgJMFibXuPFNbYQ | 103406107166 | 2022-04-14 16:41:00 |

Transaction IDs
9a435cbe204d429768237aef0ade43736fb5881017a516a2f2d2488ab1dc5b1f ("9a435c")
103406107166 (Note: Internal transfer to Binance User ID 396347614)

Based upon a balance rollforward analysis for the period March 30, 2022 through April 20, 2022, considering the Deposit History, Order History, and Withdrawal History activity for User ID: 20913870, the account maintained a positive balance of BTC and USDT following deposit of Victim proceeds.

24.     According to the Deposit History, Order History, and Withdrawal History reports provided by Binance Holdings Limited for User ID: 20913870, during the period January 1, 2022 to April 20, 2022 the account demonstrated a recurring pattern of deposit of BTC followed by immediate orders to exchange BTC for USDT, followed by rapid withdrawals to external USDT addresses and other Binance accounts. According to the Deposit History report, during this time period, the account received BTC and USDT with a combined value of approximately $498K USD; and according to the Withdrawal History report for the same time period the account sent approximately $499K USD in equivalent value of USDT and BTC.[1]

25.     According to records obtained from Binance.com (Binance Holdings Limited) on April 29, 2022 User ID: 20913870 had a remaining balance of **0.71193618 BTC** and **22.39100298 USDT**.

26.     This affidavit is submitted in support of an application for a warrant authorizing seizure of BTC for Binance.com (Binance Holdings Limited) User ID 20913870.  Thus, the SUBJECT ASSETS to be seized are as follows:

| User ID  | Currency | Amount          | USD Amount[2] |
|----------|----------|-----------------|---------------|
| 20913870 | BTC      | 0.71193618      | $27,694.32    |
|          | USDT     | 22.39100298     | $22.39        |
|          |          | Estimated Total:| $27,716.71    |

---

[1] The difference between these two amounts is, at least in part, due to the appreciation/depreciation in value of BTC occurring between the time of deposit and subsequent exchange for USDT, transaction fees incurred, and residual amounts of BTC and USDT remaining in the account throughout this period.

[2] As of April 29, 2022, the date when records were provided by Binance Holdings Limited for User ID 20913870, the price of 1 BTC was approximately $38,900 USD.

## CONCLUSION

27.     This affidavit presents probable cause to believe that Binance.com (Binance Holdings Limited) account user 20913870 committed money laundering in violation of 18 U.S.C. § 1956 (a)(1)(B)(i), (a)(2)(A), (a)(2)(B)(i), and (h) and the SUBJECT ASSETS are property involved in the underlying fraud.  On this basis, I seek authority to obtained seizure warrants for the SUBJECT ASSETS.

/s/ Simon Butler
SIMON BUTLER
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Transmitted by email and attested to by the applicant by telephone, in accordance with the requirements of Fed. R. Crim. P. 4.1 on this the   9   day of May, 2022.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE